Council, please call the next case. Case number 4-14-0338 Douglas L. Gagnon v. Workers' Compensation Commission May it please the court. Good morning, Mr. Garmer. My name is Hugh Rowden and I practice law in Decatur. I represent Petitioner Douglas Gagnon. The standard for review in this appeal is a manifest weight test. Clearly, that's the test that applies here and that's what we're here on. The facts of this case, Your Honors, it's undisputed, and the evidence was, that the petitioner sustained a compensable work accident on June 13, 2011, that his injuries were causally related to the accident, that his initial treatment was causally related to his injuries, his work injuries, that he was temporarily and totally disabled for a time, initially, following his injuries. The arbitrator found this at arbitration, the commission affirmed that. It was not reviewed by the respondent, and that's the law of the case, that the petitioner was injured on June 13, that it was causally related to his injuries, that his accident was causally related to his injuries, that all his treatment was reasonable and necessary, that he was temporarily and totally disabled, until October 12, 2011, when he was examined by Dr. Soriano, the respondent's Section 8 examiner. The arbitrator, her decision, affirmed by the commission, found that as of that date, the petitioner was not disabled, that all his treatment was not related, that he was able to go back to work. So, we have this situation, that we have a compensable work injury, that the petitioner is temporarily and totally disabled from the time of the injury until October 12, that all his treatment is reasonable and necessary, it's all related to his injury, it's all compensable, but after that date, it's not. So, to put this another way, Your Honors, Douglas Gagnon walked into Dr. Soriano's office, disabled, receiving treatment that was reasonable and necessary to treat his work injuries, he walked out, he's not disabled, none of the treatment was reasonable and necessary, and that's the basis for the arbitrator's decision in this case. Well, let's just break that down a little bit. Soriano opined that as a result of the work-related accident, the claimant did suffer mild to moderate lumbar strain with unverifiable soft-term injuries. However, he concluded that the claimant did not require surgery or any further medical treatment and that unrelated to his work accident, the claimant also suffered from degenerative facet disease. And then you had, of course, the opinions of Dr. Fulbright, but then it became clear, did it not, and the arbitrator honed in on this, that unlike Fulbright, or unlike Soriano, Fulbright was not aware of the claimant's prior back history at all. Correct? Wouldn't that be relevant to the validity of his opinions? His opinion was based on his present need for surgery. And I emphasize, he looked at the MRI, and this was not a decision made just immediately by Dr. Fulbright. He had therapy, had injection therapy, and only then did Dr. Fulbright recommend surgery, and it was after reviewing the MRI, which, by the way, Dr. Soriano did not review. At his deposition, I asked Dr. Soriano if he uses MRIs in his practice. He's a surgeon, he does surgery. He says he always does. He always has his patients undergo an MRI before surgery. And I asked him, well, Dr. Soriano, do you review those before you do surgery? He says in every case he does, he would always review an MRI. In this case, he did not review the MRI films. Kevin, we're dodging the issue. Are you saying that the claimant's history of injury to the back or back problems is irrelevant to anything in this case? As to whether he needs surgery or not? Any issue in the case. I think Dr. Fulbright admitted he had a degenerative condition. I think in – Did Fulbright know about his history of his back problems when he gave his opinion? According to the record, he did not. Well, he knew this man had a degenerative condition. He knew that. And as to whether he knew about it prior to back injuries, I don't know that that is relevant because he was making his decision based upon what he was looking at in that MRI film, that the film said this man needs surgery. And, again, Dr. Soriano did not even look at the film, did not have a chance to look at that. Ultimately, the commission found Dr. Fulbright's opinions more credible than Dr. Soriano's. You're indicating the fact that Dr. Soriano didn't review the MRI films make his opinion so infirm that the commission could not legally base its decision on his opinions. Is that correct? Because otherwise you're talking about a weighing of the opinions, and we can't re-weigh the evidence here. I know that the standard is the opposite conclusion is clearly apparent. That's the standard. And based upon – well, Dr. Soriano was retained by the respondent. This only – the exam only came about after Dr. Fulbright recommended surgery. He sees this gentleman. This is always in Rockford. He sees this gentleman in normal for an IME. He doesn't review the MRI films, which Dr. Fulbright did. So we have a doctor who has seen this man one time for five or ten minutes, didn't review the films, reviewed the records only, and made an opinion. We have Dr. Fulbright who treated the man for five months, went through all these therapy modalities, and reviewed the films. And as a board-certified neurosurgeon said, now it's time to do surgery. With those facts, I think we can say Dr. Fulbright's testimony, opinions far outweigh Dr. Soriano's. But here's the whole problem with that. Do we have any authority to make that decision? Can we decide that one expert's opinion is more credible than another, is entitled to more weight, or is it strictly within the province of the condition? Again, it's a hard standard for the petitioner to overcome. I admit that. Admittedly. But this is so incredible if you look at it this way. Douglas Gagnon walked into Dr. Soriano's office. It's the law of the case. He was disabled from his work injury. All his treatment was reasonable and necessary. And he walks out, and he's fine. There's no rational way to make any sense of that circumstance. That's what this case holds. That's what the arbitrator held. The respondent put at issue not only the petitioner's prior condition, but he also put at issue the prior settlement. And as I noted in my brief, the arbitrator spent four out of 12 pages or 13 pages of her decision talking about his 2004 injury and settlement and stated that his motivation is suspect because he did go back to work as an ironworker. But, you know, the motivation here was to get better. All the facts from Douglas Gagnon indicate that he was motivated to get better, to get back to an ironworker. He wasn't able to work. He didn't go back. He wasn't working at the time of arbitration. He didn't go back to work at any job for two and a half or three years afterwards because of his disability. It's a tough burden for the petitioner. We acknowledge that. But, you know, when you have a man who is disabled, the law of the case, the arbitrator found he had a work injury. He was disabled. All treatment was necessary. He walks into Dr. Shor's office in that situation. He walks out, and he's cured. He's fine. I mean, you can't make any sense out of that situation. And the arbitrator said, well, Dr. Soriano is more credible. Credibility here is with Dr. Fulbright. And I know all that our respondents say is, we'll find something to support Dr. Soriano's decision. Well, with these facts, I think we can say Dr. Fulbright's decision, an opposite decision, is clearly apparent. And that's the test. Thank you, counsel. Please support Dan Gomer for the respondent. In response to Mr. Rowden's argument that this man walked into the appointment disabled and walked out able to work, I don't agree with that at all. I think you have to understand that here's the arbitrator hearing the evidence in the case. She gave the claimant the benefit of the doubt, in a sense, by awarding TTD up until the day that Dr. Soriano examined the patient. Hey, we don't know if the doctor had seen this man a month earlier. He might have concluded that he could have returned to work then. He could have seen him a month after the injury and arguably could have concluded, based on the exam findings, that he could have returned then. Isn't this a straightforward case? It comes down to Fulbright versus Soriano, right? That's not the entire case. There's credibility findings that were adverse to the claimant that bear on this as well. The arbitrator explained in her decision, she says, there's two main reasons why I'm doing what I'm doing. One, I don't think the plaintiff was credible, and she found three specific instances where she said he wasn't credible. She points them out in her decision, and the commission affirms those findings. So that's part of it. They didn't believe the plaintiff, and that obviously hurts his case. And then also she goes to great lengths to say why she accepted the opinion of Dr. Soriano over that of Dr. Fulbright. What did you say about Fulbright's opinion? It seemed to me that she and then the commission ultimately found some infirmities. Wasn't it dealing with he wasn't aware of the history of the person? That's part of it. Yes, absolutely, Your Honor. Can you briefly summarize the infirmities with Fulbright? Sure. Dr. Fulbright, on cross-exam, I got him to say that his opinions are based on the reliability of the history, the accuracy and completeness of the history he receives, and if that's not the case, then his opinions could be wrong. I then proceeded to say, well, did you know that this guy had an injury in 2004, made a claim, was off work two years, was taking Vicodin, all this sort of stuff? I asked him about that, and he says, no, I didn't know about that. If you look at page 34 of his deposition, I'll quote, quote, Doctor, if Mr. Gagnon had back pain in the weeks prior to the alleged June 13, 2011, and these pain complaints were so severe he felt he needed to take Vicodin, might or could that indicate that the back problems were related to the original 2004 injury, Doctor?  That opinion supports the verdict. This isn't a case where the treating doctor's opinion is only supportive of the claimant and only supportive of inferences favorable to the claimant. That answer he gave to me supports the verdict. Here's one at page 33, and I'll quote, quote, question, the surgery you propose is to treat the degenerative changes at L3-4, correct? Answer, yes. Question, if Mr. Gagnon previously injured his back in 2004, falling off a building, injuring his lumbar spine, developed radiculopathy, was off work for nearly two years, had a positive discogram at L3-4, then settled the case for 35% of a whole person permanent disability, continued to have back pain on and off up until the time he saw you, Doctor, in your opinion, to a reasonable degree of medical certainty, might or could the condition you treated be causally related to the 2004 back injury, Doctor? Answer, yes. I mean, that opinion supports the verdict. I don't see how you can suggest that it doesn't. I even got him to say at another point, page 28, I asked him, quote, okay, and the problems you've located or described at L3-4 are, if I heard you correctly, longstanding changes rather than acute changes. Answer, that's correct. Question. Okay, now can the degenerative changes of the type you see in Mr. Gagnon's spine lead to surgery absent any particular injury? Answer, yes. Question. I don't know if you need to go through all of it. My question was, essentially, there's conflicting medical opinions. Soriano was unequivocal. Opposing counsels tried to point out some infirmities in his testimony. But now you have said that even though Fulbright initially supported the claimant on direct, he made a number of concessions under cross-examination, including the fact he was not aware of the history of the serious back injury he had a few years earlier. That's true. So this is up to the commission to win the credibility, is it not? That's how I see it. That's exactly what he's asking you to do, accept one doctor versus another. There's another weakness in Dr. Fulbright's testimony. Mr. Rowden asked him a hypothetical question, and in that hypo, to which I objected, he asked him to assume that the claimant had had no disabling back pain after the 2004 episode. He did have disabling back pain. If you look at the settlement contract from his 04 injury, he was off work for two years, or nearly two years. So, you know, a hypothetical based on unproven evidence or inaccurate evidence can be disregarded, or the answer to that question can be disregarded. And I cite the Horth and Sorensen cases in my brief for the idea that medical opinions based on inaccurate or incomplete evidence can be given little or no weight. And so that principle weighs in here as well, Your Honors. You can certainly use that argument. But, you know, there's three specific instances where the arbitrator says, I don't believe the claimant. He says he didn't know he had permanent work restrictions following his last injury. Well, that's silly. I mean, he was off work for several years. It was three and a half years after the claim that he settled that case finally. He changed jobs, going from being a union iron worker to a truck driver, and the arbitrator said, well, you surely knew you had permanent work restrictions or you wouldn't have changed the job. And the doctor's records that treated him from 2004, 2005 are all in evidence. Dr. Smucker, you see right in there that he placed permanent work restrictions on this guy. He wouldn't be unaware of the fact that he had those restrictions. Heavens, he leveraged those restrictions into getting a bigger settlement. That's the point of it. Restrictions lead to more money when it comes time for an award and a work comp claim. He claimed he didn't have any problems that he'd made a complete and total recovery from his 2004 injury. She didn't believe that either. And why would she? He was seeing Dr. Munacy's, his own doctor, the year before this injury claim, and he was in there telling the doctor that he had back pain for which he was taking Vicodin weekly. And he was getting it illegally from friends and others rather than from doctors. And he was chastised by his treating doctor saying, hey, that's illegal. Knock it off. And yet the claimant gets on the stand at the arbitration hearing and says he hadn't even seen a doctor for his back in the last two years. Nobody's going to forget that you go to the doctor's office and the doctor jumps all over you and tells you that you're breaking the law for getting illegal drugs. I mean, you can certainly construe from that that the claimant didn't tell the truth at arbitration. And he also says he had no need or reason to be taking narcotic medicine in the weeks before the current claim. There's evidence in the record the very first day he comes to work for my client, he's having back pain and he asks a fellow worker for Vicodin. He asked this guy two times in the two weeks before the injury for Vicodin, for back pain. I mean, that certainly supports an inference that he never had completely recovered from his prior injury. Or does it support a reasonable inference that he's addicted? He didn't testify. That thought occurred to me, Your Honor. I mean, it would be reasonable if he said, I'm taking medicine because I'm addicted, not because I'm in pain. But he didn't say that. So he also said he hadn't seen a doctor for pain in the last two years and he hadn't been taking narcotic medicine. So I think you're entitled to construe things adversely to a claimant whose credibility is as lacking as this guy's. I mean, we've got five people in this case. An arbitrator, three commissioners, and the circuit court judge, all of whom say this verdict is supported by the evidence. And it seems to me that under the standard that we have before us, you'd have to determine that all five of those were irrational or unreasonable constructions of the evidence in the case. And I just don't see how Mr. Rodden can get over that bar. I think there is enough conflicting evidence in this case, both medical and credibility of the claimant, that the verdict should be supported under a manifest weight standard. And that's what I ask that you do. Thank you. Thank you, Counsel. Counsel, you may reply. Thank you. Credibility of the petitioner is not really at issue here. The arbitrator said it was. But the arbitrator found that he had suffered a work injury, that he was disabled. It was causally related to his work injury. So the fact that he's not credible on that doesn't reconcile with our findings, which I submit are the law of the case. It's the law of the case that he had a work injury. Everything was related to his work injury up until October 12, the day of the IME. As far as Dr. Fulbright. So this then moves us back to one doctor versus another. That's exactly what this case is about, exactly what this case is about. And Dr. Fulbright, there's some hint here that he didn't know about the prior back injury. Well, the doctor didn't indicate that had any bearing at all on his recommendation for surgery. His recommendation for surgery was based upon the petitioner's condition, not on what the petitioner told him, but on his condition, the results of the therapy, which were ineffective, the results of the injection therapy, which was ineffective, and the MRI, which he examined. That's why he based his recommendation for surgery, not on what the petitioner said. The arbitrator talks about the petitioner's motivation, and the thread through the whole entire decision is that, well, the petitioner got too much money back in 2004, and now we're not going to let him bamboozle the commission again. And that's not what happened. This is a man who didn't work as an iron worker for two years, but then tried it, to his credit, tried to go back to work, and the record in this case shows before he was doing heavy iron work, but when this happened, everything stopped. And that's the rule of the case, that he had a work injury that caused him to be disabled until October 12. And then, miraculously, October 12, he's not disabled because he walks out. He walks into Dr. Soriano's office disabled in all treatments necessary. He walks out, and he's not disabled anymore. That just doesn't make any sense with the same symptoms. And that's what the respondent has to reconcile, and they throw in this stuff about seeing Dr. Manessis and asking for Vicodin. That's irrelevant because the arbitrator found he was credible on accident and credible on causation as far as the injury is concerned. The question of credibility is the two doctors, and I think Dr. Fulbright's situation clearly is enough to sustain our substantial burden that no other, that the opposite conclusion is clearly apparent. Thank you. Thank you, counsel. Both this matter will be taken into consideration. Court will stand at brief recess.